## NEBRASKA WESLEYAN UNIVERSITY V. H. ALMENA PARKER.

#### FILED OCTOBER 20, 1897.    No. 7511.

1. **Instructions: PRINCIPAL AND AGENT: AUTHORITY OF AGENT.** Where it is sought to hold a principal liable on a contract made by his agent, and the authority of the agent to make the contract is one of the issues being tried, unless there is some evidence to show that the agent had authority to make the contract, it is error for the court to instruct the jury that they may determine whether the agent had authority to make such contract.

2. **Principal and Agent: RATIFICATION.** Where it is sought to hold a principal liable on an unauthorized contract of his agent, and the issue is whether the principal ratified the contract, it is error for the court to instruct the jury that they may find that the principal by his acts ratified such contract, when there is no evidence that the principal knew of the existence of the contract at the time he performed the acts which it is claimed amounted to a ratification.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J. *Reversed.*

*Stewart & Munger*, for plaintiff in error.

*C. M. Parker* and *John P. Maule, contra.*

RAGAN, C.

In the district court of Lancaster county Miss H. Almena Parker sued the Nebraska Wesleyan University. Miss Parker claimed in her petition that the university employed her as a teacher of elocution for one year at a salary of $1,000; that she had rendered the services for which she was employed, and that the compensation had not been paid. She had a verdict and judgment and the university brings the case here for review on error.

1. The university is an educational institution incorporated under the laws of this state. Its affairs are managed by a board of trustees. One Creighton was a member of this board of trustees and was the chancellor, or

chief officer, of the university. The chancellor was appointed one of a committee of three to select professors for the university upon examination of applications on file, and to report to the board of trustees. This board of trustees was by the charter of the institution invested with the power to employ professors and fix their salaries. The chancellor, as chairman of the committee appointed to recommend teachers, reported to the board, in effect, that, subject to its order, he had employed Miss Parker as a teacher in elocution for one year; that the university was not to pay her any salary but that whatever charges were made to students for elocution lessons should be turned into the treasury of the university and Miss Parker should be entitled to these fees and should take the same in full compensation for the services she might render as a teacher of elocution; or, to use the language of the board of trustees, the chair of elocution was to be "self-sustaining." The university contended that the services rendered by Miss Parker were rendered under this contract. On the other hand Miss Parker contended that she entered into a contract with the chancellor as a member of the committee to employ teachers, in and by which she was to serve the university one year as a teacher of elocution and was to be paid therefor a salary of $1,000. The jury found that Miss Parker's version of the contract was the correct one and the evidence abundantly sustains the finding made. Counsel for the university do not call in question the sufficiency of the evidence to sustain the finding of the jury on this point.

2. The evidence in behalf of Miss Parker all tended to show that the contract between her and the university was made on behalf of the latter by its chancellor and by no one else; and one of her contentions was that he had authority to make this contract. Another one of her contentions was that, if he made the contract without authority, the university had ratified it; while the university contended that the chancellor had no authority to make the contract and, if he did make it, the university

had never ratified it. The district court on its own motion instructed the jury that, if it found the chancellor had entered into the contract with Miss Parker, as she claimed, and if it further found that the chancellor was authorized and empowered by the university to make this contract, then the university would be bound. There is no objection to the instruction as a matter of law, but the trouble with it is there was no evidence on which to base it. The undisputed evidence in the record is that neither by the charter, by-laws, nor board of trustees of the university, was the chancellor invested with authority to employ teachers. The extent of his authority was to recommend teachers to the board of trustees.

By another instruction, the district court told the jury that if they should find the chancellor and Miss Parker made the contract which the latter claimed, and the chancellor was not authorized to make such a contract, still the university would be liable on the contract if the jury should find that its board of trustees ratified the same. This instruction as a proposition of law is unobjectionable, but we have looked in vain throughout this record for one word of evidence which even tends to show that the board of trustees ever had any knowledge, until after this suit was brought, that the chancellor had made the contract with Miss Parker, which she alleges he made and which the jury has found he did make. Since it was sought to hold the university liable on the contract made by its chancellor on the theory of a ratification of that contract, the giving of the last instruction was prejudicially erroneous, as the jury may have concluded, and probably did conclude, that because Miss Parker had served the university for a year with the knowledge and consent of the board of trustees, therefore they had ratified the contract made. The fact that Miss Parker served the university as a teacher of elocution for a year does not alone justify the inference that the board of trustees knew of the contract existing between her and the chancellor. When it is sought to estop a principal because of

his ratification of an unauthorized act of his agent it is
not enough to show that he has in some manner approved
of the act, but it must be made to appear that such ap-
proval was with knowledge of what the agent had done
and promised in the premises on behalf of his principal.
(*Cram v. Sickel,* 51 Neb., 828, and cases there cited.) The
board of trustees did know that Miss Parker was teaching
elocution in the university. They knew that her employ-
ment had been recommended by the chancellor, but they
did not know at any time until after her employment
terminated of the existence of the contract which she
pleads in this action. The judgment of the district court
is reversed.

REVERSED AND REMANDED.