JEFFERSON IRON COMPANY ET AL. v. J. C. HART, TAX COLLECTOR.

Delivered March 5, 1898.

**1. Road Tax—Special Election—Constitutional Law.**

The proviso of article 8, section 9, of the Constitution, as amended in 1890, with reference to the submission to the voters of the county of the question of levying a tax of 15 cents for highway purposes, applies only to the "additional" tax authorized by the amendment, and does not apply to the first levy of a road and bridge tax of 15 cents on each $100 valuation which was authorized before the amendment.

**2. Taxes—Illegal Levy—Diversion.**

Taxes levied by the county commissioners court by virtue of article 8, section 9, of the Constitution, empowering it to levy a separate tax for public buildings and other permanent improvements, if really levied for the purpose of using it for general county purposes, and thereby evading the limitation upon the amount of taxes for such latter purposes, are unauthorized and illegal.

APPEAL from Marion. Tried below before Hon. J. M. TALBOT.

*L. S. Schluter,* for appellants.

*W. T. Armistead,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellants instituted this suit in the District Court of Marion County, Texas, to enjoin the collection of the following taxes, levied and assessed by the Commissioners Court of Marion County for the year 1895, to wit, $12\frac{1}{2}$ cents on the $100 for stationery; $12\frac{1}{2}$ cents for jury special purposes; 20 cents for court-

house repair, and 15 cents on the $100 for road and bridge purposes. Also to enjoin the following taxes levied and assessed against them by the same authority for the year 1896, to wit, 25 cents on the $100 worth of property for courthouse repair, and 15 cents on the $100 for road and bridge purposes. The suit was brought by the appellants as taxpaying citizens of Marion County, for themselves, and such other like citizens as might desire to avail themselves of the proceedings, against appellee, as tax collector of said Marion County, Texas. The petition set up the amount of the property rendered by each of the plaintiffs for taxation for said years and the amount of the taxes assessed against each of them, and especially the amount of the taxes as assessed and charged against them under the taxes herein complained of, which they alleged to be illegal, unauthorized, and void. The petition further alleged that the said taxes as shown by the rolls in the hands of the appellee as collector, were all grouped together in one column as "county taxes," and without stating the purpose for which said taxes were levied, or showing the amount of each special tax. Plaintiffs further alleged that they had tendered and paid all the other taxes assessed and charged against them for said years except the taxes hereinbefore complained of. Plaintiffs further alleged that the taxes of 12½ cents for stationery and 12½ cents for jury special for the year 1895, were wholly unauthorized and void, and that the tax of 20 cents on the $100 for 1895, and 25 cents for 1896, for courthouse repair, were also illegal, unauthorized, and void, for that there were no repairs being made on said courthouse during said years, and none contracted for; and that the fund arising from said tax was not expended in making permanent improvements on said courthouse, but that the same was used and expended in the payment of the ex officio salaries of the various county officers and other current expenses of the county; and that during each of said years the County Commissioners Court had levied and assessed taxes for general county purposes to the extent and limit allowed by law, in addition to the taxes herein complained of. That there was at this time now on hand a surplus in the fund known and designated as courthouse repair fund. They also alleged that there never was at any time any election held in Marion County at which was submitted to the qualified taxpaying voters the proposition as to whether or not a road and bridge tax of 15 cents, or any other sum, should be levied and assessed in said county. That all of the taxes complained of were illegal, unauthorized, void, and oppressive, and prayed for injunction to restrain the appellee, as collector, from the collection of said taxes. The preliminary injunction was granted at chambers by the court, and at the June term, 1897, of the court the cause came on for trial.

Upon these pleadings the cause proceeded to trial before the court without the intervention of a jury, which trial resulted in a judgment perpetuating the injunction as to the 12½ cents tax for stationery and 12½ cents for jury special, and as to the other taxes complained .

of the injunction was dissolved, to which judgment the appellants excepted, and have duly perfected their appeal.

The trial court found and filed the following conclusions of fact, viz.:

"1.   That the County Commissioners Court of Marion County, Texas, at its regular May term, 1895, levied taxes for said year as follows: For general county purposes, 25 cents on the $100 worth of property, real and personal, situate in Marion County; also the following special taxes for said year, to wit: For road and bridge purposes, 15 cents on the $100; for courthouse repair, 20 cents on the $100; for jury special fund, $12\frac{1}{2}$ cents on the $100; for stationery special fund, $12\frac{1}{2}$ cents on the $100. And that the plaintiffs were assessed for said year the sums as stated in their petition.

"2. That the said Commissioners Court, at its August term, 1896, levied taxes upon all the real and personal property in Marion County, Texas, by the following order, entered August 10, 1896: 'August 10, 1896.  Ordered by the court, that taxes be levied, assessed, and collected on all real and personal property in Marion County, Texas, for the year 1896, for general county purposes, 25 cents on the $100 worth of property; for road and bridge purposes, 15 cents on the $100 worth of property; for courthouse repair purposes, 20 cents on the $100 worth of property; for school bond purposes, 20 cents on the $100 worth of property; for Coler judgment purposes, 60 cents on the $100 worth of property.'

"3.   That the plaintiffs and interveners rendered for taxes for said year of 1896 property of the value as stated in their petition filed herein, and there was assessed against said property the amount as specified in said petition, and that the said plaintiffs and interveners have tendered and paid to the tax collector of Marion County all taxes so against them assessed, except the road and bridge tax of 15 cents on the $100, and the 25 cents courthouse repair tax on the $100.

"4.   That the said several sums assessed as special taxes are all grouped together upon the rolls in the hands of the collector of taxes, in one column, as county taxes, without showing for what purposes the same are levied.

"5.   That there was never any election held in Marion County at which was submitted to the taxpaying qualified voters of said county the proposition as to whether or not a road and bridge tax of 15 cents on the $100 worth of property should be levied by the Commissioners Court of said county.

"6.   That the tax so levied of 25 cents on the $100 worth of property for courthouse repair was first levied a number of years ago, and at that time was levied to pay for the building of a fireproof vault for the county.   That this vault was fully paid for in 1888, and every year since that time the said tax has been levied, assessed, and collected, in addition to the 25 cents levied for general county purposes.   That prior to 1896, and from 1888 up to that time, the tax for courthouse repair has been 20 cents on the $100 worth of property, and that for 1896 said tax was 25 cents on the $100 worth of property.   That there has been an-

nually collected since 1888, when the vault was paid for, the sum of about $4000 per annum under this courthouse repair tax, and that the aggregate amount so collected since 1888 for said tax is about $32,000. That the money so realized by said courthouse repair tax has been used and expended in the payment of ex officio salaries to the officers òf the county, feeding prisoners, guards for jail, stationery, paying jurors, buying fuel, keeping up stoves, and making such repairs as were necessary on the courthouse and jail. That during this time no money was received from taxes levied for general county purposes, the same having been paid in county scrip, which was almost worthless.

"7. That no repairs are now contracted for on said courthouse and jail, nor have there been any repairs of much consequence made on either the courthouse or jail since the building of the fireproof vault, which was built about the year 1885 or 1886, and was fully paid for in 1888.

"8. That there is now on hand, as shown by the treasurer's last report, something over $2000 in this fund. That the courthouse originally only cost $2500, and improvements were made at the time to the extent of $1250, making total cost of said building $3750, and this building was bought and these improvements made about fifteen years ago, all of which have long since been paid for.

"9. That the Commissioners Court has every year since 1888 levied for general county purposes a tax reaching the limit required by law in addition to the road and bridge tax, and the courthouse repair tax herein complained of."

Appellants' first assignment of error reads: "The court erred in its conclusions of law, and in the second paragraph thereof, wherein it holds and finds that the 'road and bridge tax of 15 cents for the year 1895 and 1896 is valid, although there was no election on said tax,' and wherein it holds in said conclusion that 'no election was necessary to support the validity of said tax.'"

Under article 8, section 9, Constitution of Texas, as amended in 1883, the counties of this State were authorized to levy a road and bridge tax of 15 cents on each $100 worth of property. The Legislature made provision for putting this clause of the Constitution into effect by the Act of ———, 1885, Revised Statutes, article 5050, which authorizes the commissioners courts of the several counties of this State to levy a tax of 15 cents on each $100 valuation of property for roads and bridges. Under this law the levy complained of by appellants was made.

In 1890, section 9, article 8, of the Constitution was again amended, and by the terms of the section so amended in 1890, authority is given to the several counties of the State to levy a tax of 15 cents on each $100 valuation of property; and it is further provided, that "the Legislature may also authorize an additional annual ad valorem tax, to be levied and collected for the further maintenance of the public roads; provided, that a majority of the qualified property taxpaying voters of the county, voting at an election to be held for that purpose, shall vote such tax,

not to exceed 15 cents on the $100 valuation of the property subject to taxation in such county."

The Legislature did make provision for the putting into effect the additional authority conferred by this amendment by the Act of April 1, 1891 (Revised Statutes, article 4786), by authorizing the commissioners court of any county, upon the presentation to it at a regular session of a petition signed by 200 qualified voters, property taxpayers, to order an election to determine whether there shall be levied upon the property within said county a road tax not to exceed 15 cents on the $100 valuation of property under the provisions of the amendment to the Constitution, adopted in 1890. The subsequent sections of the law prescribes how the election shall be held, and if a majority of the qualified voters voting at such election vote for said tax, then the commissioners court shall levy the tax. Rev. Stats., art. 4798.

It seems to be contended by appellants that the levy made by the Commissioners Court of Marion County of 15 cents on each $100 valuation of property for roads and bridges was made under this law, and that an election must have preceded the levy, at which a majority of the taxpaying voters voting at such election voted in favor of the levy. This contention is not tenable. Only one levy of a road and bridge tax was made by the Commissioners Court of Marion County of 15 cents on each $100 valuation of property for each of the years of 1895 and 1896. This was authorized under section 9, article 8, of the Constitution, and article 5050, Revised Statutes. Had the Commissioners Court desired to levy an additional road and bridge tax for those years, then it would have had to proceed under chapter 7, title 97, Revised Statutes.

Appellants' second assignment of error complains of the third paragraph of the trial court's conclusions of law, wherein the court holds, "that the tax of 20 cents for 1895, and 25 cents for 1896, for courthouse repair is authorized under the law for permanent improvements, and the necessity for the levy and collection of the same is a question to be determined by the Commissioners Court."

And by their fourth assignment of error appellants assign as error the rendition of the judgment dissolving the injunction as to the courthouse tax of 20 cents on the $100 for the year 1895, and 25 cents for the year 1896. These assignments will be considered together.

The commissioners court has power to levy a tax of not to exceed 25 cents on each $100 valuation of property for public buildings and other permanent improvements. Const., art. 8, sec. 9; Rev. Stats., art. 5050. This same article and section of the Constitution provides that the counties shall levy a tax for not more than 25 cents on the $100 valuation of property for county purposes. See also Sayles' Civ. Stats., art. 1538. From the court's finding of fact, it appears that the Commissioners Court of Marion County for the years 1895 and 1896 had levied a tax for each of these years for county purposes of 25 cents on each $100 valuation of property, being the full limit for which a tax could be

levied for county purposes. Said court also levied a tax of 20 cents on each $100 valuation of property for courthouse repairs for 1895, and 25 cents on each $100 valuation of property for courthouse repairs for 1896. That at the time of making these levies no repairs to the courthouse had been contracted for, nor were there any in contemplation; and that there was on hand in this fund $2000. The court further finds that a tax of 20 cents on each $100 valuation has been levied by said Commissioners Court since 1888 for courthouse repair, and that there has been annually collected under this levy about $4000, which has been expended in the payment of ex officio salaries to the county officers, feeding prisoners, guards for jail, stationery, paying jurors, keeping up stoves, and making such repairs as were necessary to the courthouse and jail. The court finds that there has not been any repairs of any consequence on either the courthouse or jail since the building of the fireproof vault in 1886, which was fully paid for in 1888. That the courthouse was bought about fifteen years ago, and originally cost $2500, and improvements were made on it at the time of $1250—making a total cost of $3750—all of which amounts have long since been paid.

Can this tax be sustained under these findings? The case of Railway v. Dawson County, 12 Nebraska, 255, was a suit by injunction to restrain the collection of a sinking fund tax. It appeared that large sums collected for the sinking fund tax for the three previous years had been transferred to the county general fund. The court in that case uses the following language: "The limitation upon the rate of taxation is for the protection of the taxpayers, and to secure economy in the expenditure of public moneys. It is the evident intention of the law that only the amount required in any particular fund shall be levied, and no more. If the law limits the levy for the ordinary county revenue to ten mills on the dollar valuation, no greater sum can be raised for that purpose by levying more than is required for a sinking fund, or any other tax, and then transferring the surplus to the general fund. If the law could be thus evaded it would afford no protection to taxpayers whatever." See also Vanover v. Justices, 27 Ga., 355; State v. Marion County, 21 Kan., 315; National Bank v. Barber, 24 Kan., 387; Desty on Tax., 1059; Cool. on Tax., 2 ed., 277.

In this case it appears that for the past eight years a tax for courthouse repairs has been levied and collected, and appropriated for county purposes. The petition alleges, in effect, that there is no necessity for this tax; that it is levied for the purpose of and with the intention of using the fund arising therefrom for the payment of the current expenses of said county, and not for the purpose of repairing the courthouse and jail. These allegations are sustained by the findings of the trial court.

Under these facts, if the tax for the "courthouse repair" is sustained, it in effect renders nugatory the limitation in the Constitution prohibiting a county from levying a tax in excess of 25 cents on each $100 valua-

tion of property for county purposes. This provision of the Constitution can not be defeated in this indirect manner.

If this were a case in which the Commissioners Court was exercising its discretion as a court in the levy of a tax, we would not feel authorized in interfering with its discretion. The record presents a case in which the commissioners court, after having levied a tax for county purposes to the full limit authorized by the Constitution, has made an additional levy for the purported purpose of courthouse repairs, when the real purpose and intention is to raise a fund for general county purposes. This seems a means adopted to defeat the limitation on taxation for county purposes imposed by the Constitution. It is the duty of the courts in súch a case, when their power is properly invoked, to interfere and prevent the threatened wrong. Wharton v. School Directors, 42 Pa. St., 359; Dean v. Lufkin, 54 Texas, 265; Railway v. Dawson County, supra; State v. Marion County, supra; Vanover v. Justices, supra.

We think the tax of 25 cents on the $100 valuation for 1895, and 25 cents for 1896, for "courthouse repair" was unauthorized and illegal, and that the trial court erred in not so holding. We sustain appellants' second and fourth assignments of error.

The cause having been tried by the court without the intervention of a jury, and there appearing to be no controversy as to the facts, the judgment of the trial court will be reformed and rendered in accordance with this opinion, perpetually enjoining the collection of the jury special tax of 12½ cents, and the stationery tax of 12½ cents for the year 1895, and 20 cents for 1895 and 25 cents for 1896 for courthouse repair on each $100 valuation of property.

*Reformed and affirmed.*